UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

EILEEN JOY GRODETZKY,

                      Debtor.
----------------------------------------------------------x
JOEL A. DRUCKER,

                      Plaintiff,

-against-

EILEEN JOY GRODETZKY,

                      Defendant.
----------------------------------------------------------x

Chapter 7

Case No. 09-51344-CEC

Adv. Pro. No. 10-01074-CEC

## DECISION

APPEARANCES:

Joel A. Drucker, Esq.
90 Broad Street, 25th Floor
New York, New York 10004
Pro Se

Eileen Joy Grodetzky
1600 River Pointe Drive
Conroy, Texas 77304
Pro Se

                                        CARLA CRAIG
                           Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Joel A. Drucker ("Drucker" or the "Plaintiff"), seeking to execute a judgment entered by this Court in his favor against Eileen Grodetzky ("Grodetzky" or the "Debtor") on one-half of a bank account jointly held by Grodetzky and her mother, Rosalind Goldstein ("Goldstein"). Grodetzky opposes the Plaintiff's motion, arguing that the funds in the bank account are not subject to execution because they belong solely to Goldstein. For the reasons set forth below, Grodetzky holds an undivided one-half interest in the funds in the joint bank account, and accordingly, the Plaintiff's motion is granted.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

On or about August, 2007, Suzzanne Cacciotti ("Cacciotti") retained Drucker to represent her in a matrimonial dispute with her husband. According to Drucker, Cacciotti's mother, Grodetzky, orally guaranteed the payment of her daughter's legal fees at the outset of the representation. On August 6, 2008, Grodetzky's guaranty of payment was confirmed in writing. (Pl. Aff. in Reply, Ex. A.) Over the two year period during which Drucker represented Cacciotti, legal fees accrued in excess of $80,000.

Case 1-10-01074-cec    Doc 22    Filed 03/05/12    Entered 03/05/12 16:33:23

2

Grodetzky filed a petition for relief under Chapter 7 of the Bankruptcy Code on December 23, 2009. On March 25, 2010, Drucker commenced an adversary proceeding against the Debtor, objecting to her receipt of a discharge and to the dischargeability of the debt owed to him by the Debtor on account of her daughter's legal fees. The Debtor filed her answer on May 11, 2010. The parties reached a settlement resolving Drucker's claims, and on January 3, 2011, a consensual nondischargeable judgment in favor of the Plaintiff was entered against the Debtor in the amount of $40,000 (the "Judgment"). Under the terms of the Judgment, which was signed by the Debtor's attorney on her behalf, the Debtor was to satisfy the Judgment by making monthly payments to Drucker in the amount of $200.00.

On December 19, 2011, the Plaintiff filed an affirmation in support of an order to show cause, seeking an order declaring funds in the Debtor's joint savings account, number xxxxxxxx0222, owned jointly by the Debtor and Goldstein at Bank of America (the "Joint Savings Account") to be not exempt from execution, and to stay Bank of America from releasing a freeze on the Joint Savings Account (the "Affirmation"). In the Affirmation, the Plaintiff represented that the Debtor ceased making payments in compliance with the Judgment in July of 2011, and that the Plaintiff served Bank of America with a restraining notice pursuant to N.Y. CPLR 5222 on December 5, 2011, freezing the funds in the Joint Savings Account and in checking account, number xxxxxxxx8322, also owned jointly by the Debtor and Goldstein (together, the "Joint Bank Accounts"). According to the Affirmation, the Debtor filed an Exemption Claim Form in accordance with N.Y. CPLR 5222-a(c), claiming that the funds in the Joint Bank Accounts were exempt because the funds were proceeds from the sale of Goldstein's apartment.

Case 1-10-01074-cec    Doc 22    Filed 03/05/12    Entered 03/05/12 16:33:23

3

An order was entered on January 6, 2012, finding that that the funds in the Joint Savings Account were not exempt from execution, and directing Bank of America to continue its freeze on one-half of the funds in the Joint Savings Account pending further order of the Court. On January 31, 2012, a hearing was held to determine whether the funds in the Joint Savings Account are in fact the Debtor's property subject to execution by the Plaintiff.

DISCUSSION

Under New York Banking Law § 675, the establishment of a joint bank account "creates a rebuttable presumption that each named tenant is possessed of the whole of the account so as to make the account vulnerable to the levy of a money judgment by the judgment creditor of one of the joint tenants." Viggiano v. Viggiano, 523 N.Y.S.2d 874, 875 (App. Div. 1988). [1]

In this case, it is undisputed that Grodetzky and Goldstein are named owners of the Joint Bank Accounts. Although some courts have concluded that a signature card with the requisite survivorship language is a necessary prerequisite for the statutory presumption of joint tenancy to arise, here, even without the Joint Savings Account's signature card, the Plaintiff introduced

---

[1] New York Banking Law §§ 675(a) and (b) provide: (a) When a deposit of cash, securities, or other property has been made or shall hereafter be made in or with any banking organization or foreign banking corporation transacting business in this state, or shares shall have been already issued or shall be hereafter issued, in any savings and loan association or credit union transacting business in this state, in the name of such depositor or shareholder and another person and in form to be paid or delivered to either, or the survivor of them, such deposit or shares and any additions thereto made, by either of such persons, after the making thereof, shall become the property of such persons as joint tenants and the same, together with all additions and accruals thereon, shall be held for the exclusive use of the persons so named, and may be paid or delivered to either during the lifetime of both or to the survivor after the death of one of them, and such payment or delivery and the receipt or acquittance of the one to whom such payment or delivery is made, shall be a valid and sufficient release and discharge to the banking organization or foreign banking corporation for all payments or deliveries made on account of such deposit or shares prior to the receipt by the banking organization or foreign banking corporation of notice in writing signed by any one of such joint tenants, not to pay or deliver such deposit or shares and the additions and accruals thereon in accordance with the terms thereof, and after receipt of any such notice, the banking organization or foreign banking corporation may require the receipt or acquittance of both such joint tenants for any further payments or delivery.
(b) The making of such deposit or the issuance of such shares in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding to which the banking organization, foreign banking corporation, surviving depositor or shareholder is a party, of the intention of both depositors or shareholders to create a joint tenancy and to vest title to such deposit or shares, and additions and accruals thereon, in such survivor. The burden of proof in refuting such prima facie evidence is upon the party or parties challenging the title of the survivor.

sufficient evidence to invoke the presumption of joint tenancy created by New York Banking Law § 675.  Compare, In re Estate of Ancell, 741 N.Y.S.2d 397, 398 (N.Y.Sur.Ct. 2002) ("absent survivorship language on the signature card, the Banking Law presumption does not apply"), with In re Estate of Butta, 746 N.Y.S.2d 586 (N.Y. Sur.Ct. 2002) (holding that, although the signature card could not be located, the statutory presumption still applied on the basis of a bank employee's testimony that the signature card used by the bank at the time the account was opened included survivorship language).

As evidence that the Debtor and Goldstein possess survivorship rights in the Joint Savings Account, the Plaintiff proffered an affidavit from a representative of Bank of America, in which the representative responded to several of the Plaintiff's written questions.  In response to the Plaintiff's question whether the Joint Savings Account was a joint account, the representative answered "yes." (Pl. Supp. Aff.)  In response to the Plaintiff's question whether Grodetzky or Goldstein would receive the proceeds of the Joint Savings Account in the event of the death of the other, the representative also answered "yes."  (Pl. Supp. Aff.)

The Debtor does not dispute that she and Goldstein each possess survivorship rights in the Joint Savings Account.  In fact, at the hearing on January 31, 2012, the Debtor stated she signed a card that provided that, in the event of the death of either her or her mother, the survivor would be entitled to the funds in the Joint Savings Account.  (Tr. at 8.)[2]  Accordingly, based on the admission of the Debtor and the affidavit from the representative at Bank of America, it is presumed under New York Banking Law § 675 that a joint tenancy exists with respect to the funds in the Joint Savings Account.

---

[2] "Tr." refers to the transcript of the hearing held on January 31, 2012. Citations to the transcript are by page number.

Once the presumption of joint tenancy arises under New York Banking Law § 675, the burden shifts to the defendant to rebut the presumption. See N.Y. Banking Law § 675(b). "The presumption created by Banking Law § 675 can be rebutted by providing direct proof that no joint tenancy was intended or substantial circumstantial proof that the joint account had been opened for convenience only." Signature Bank v. HSBC Bank, 889 N.Y.S.2d 242, 242 (2d Dept 2009). Mere conclusory assertions are insufficient to rebut the presumption. Id.

The Debtor failed to rebut the presumption in this case. The Debtor argues that the Joint Bank Accounts were opened as joint accounts merely as a matter of convenience to allow the Debtor to pay for Goldstein's medical costs, rent, and other expenses. (Tr. at 8.) The Debtor's own statements and actions, however, show that the use of the accounts was not so limited. At the hearing on January 31, 2012, the Debtor noted that her monthly social security checks were deposited into the Joint Bank Accounts, and that she used the funds in the accounts to pay her own expenses. (Tr. at 9, 10.) In addition, at least one of the $200 payments made to Drucker on account of the Debtor's liability pursuant to the Judgment was made on a check from the Joint Bank Accounts. The records of the Joint Bank Accounts further establish that the Debtor regularly used the funds in the accounts for herself, her daughter, and for expenses beyond those of Goldstein. (Pl. Ex. 1, Pl. Ex. 2.)

These facts stand in stark contrast to the facts underlying cases in which courts have found that the presumption of joint tenancy under New York Banking Law § 675 was rebutted. For example, in Viggiano v. Viggiano, the court found that the presumption was successfully rebutted where the defendant was not in possession of the account's bank book and where there was evidence that the defendant made no deposits or withdrawals from the account. 523 N.Y.S.2d 874, 875 (2d Dept. 1988); see also In re Estate of Corcoran, 877 N.Y.S.2d 522 (3d

Case 1-10-01074-cec    Doc 22    Filed 03/05/12    Entered 03/05/12 16:33:23
6

Dept 2009); <u>Wacikowski v. Wacikowski</u>, 461 N.Y.S.2d 888 (2d Dept. 1983) (finding the presumption under New York Banking Law § 675 to have been rebutted on the basis of evidence that one of the parties never deposited funds into or withdrew funds from the account in question). The commingling of funds in the Joint Bank Accounts and the Debtor's use of the Joint Bank Accounts' funds for her and her daughter's benefit clearly evidence that the form of the accounts was not merely a matter of convenience.

A review of the records of the Joint Bank Accounts, which were received in evidence, also shows that the social security and pension funds that Grodetzky and Goldstein receive on a monthly basis, which are exempt from execution under N.Y. CPLR 5222, were not deposited into the Joint Savings Account. The records show that these funds were only deposited into joint checking account, number xxxxxxxx8322, and no evidence has been introduced to suggest that any exempt funds were transferred into the Joint Savings Account. Accordingly, because under New York law a judgment creditor can execute on funds in a bank account held in joint tenancy by a judgment debtor that are otherwise not exempt, Drucker may execute his judgment on one-half of the funds in the Joint Savings Account.

## CONCLUSION

For the reasons set forth above, Drucker's motion to execute the Judgment dated January 3, 2011 on one-half of the funds in Bank of America savings account number xxxxxxxx0222, jointly held by the Debtor and Goldstein, is granted. A separate order will issue.



**Dated: Brooklyn, New York**
**March 5, 2012**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**